**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| *In re: AnnieMac Data Breach Litigation* | Master File No. 1:24-cv-10678<br><br>District Judge Renée Marie Bumb<br>Magistrate Judge Matthew J. Skahill |

**STIPULATION AND [~~PROPOSED~~] ORDER REGARDING DISCOVERY
OF ELECTRONICALLY STORED INFORMATION AND HARD COPY
DOCUMENTS**

Before the Court is a stipulation for the entry of an Order governing the discovery of electronically stored information ("ESI") in the above-referenced matter. The Court having reviewed the stipulation, hereby orders the following:

1.    **PURPOSE**

This Order will govern discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules for the District of New Jersey, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2.    **GENERAL PRINCIPLES**

Nothing in this Order shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Except as expressly provided herein, the parties

do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of any particular documents or ESI.

This Stipulated Order may be modified in the Court's discretion or by agreement of the parties for good cause shown. If the parties cannot resolve their disagreements regarding these modifications, the parties shall seek a resolution pursuant to the Federal Rules of Civil Procedure governing discovery disputes.

This Stipulated Order may only apply to the parties in this matter.

3.    **DEFINITIONS**

The following definitions shall control the production of discoverable documents and electronically stored information. The following terms shall be defined:

a)    "Archival Systems" refers to long-term repositories for the storage of records that preserve the content of the documents, prevent or track alterations, and control access.

b)    "Bates Number" means an identifier that consists of a short two to ten letter prefix, associated with the Producing Party's name, followed by six numbers (e.g. ABCD000001). The prefix should include only letters, dashes, or underscores. The prefix and number should not be separated by a space. Each page in the production is assigned a unique, incremental Bates Number.

c)    "Custodian" shall mean any individual of a producing party, as identified and agreed by the parties, as likely having possession, custody, or control of potentially relevant documents.

d)    "Document(s)" shall have the same definition as set forth in Federal Rules of Civil Procedure 26 and 34, and when used herein, refers to both ESI (including, but not limited to, loose documents/unstructured data, email, structured data, data compilations) and hard copy

documents. As used herein, "documents" and "data" are synonymous.

e) "Extracted Text" means all text content extracted from a Native File, in the format of a single *.txt file for each file (i.e., not one *.txt file per *.tif image), and includes all header, footer and document body information. Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file. The text file shall contain image keys/Bates numbers for each page. In the event extracted text is not otherwise available, or if a document has redactions, OCR text may be produced in its place.

f) "Load File" means an electronic data file containing information identifying documents containing (i) an indication of which individual pages or files constitute each Document and/or (ii) relevant data relevant to each individual Document, including extracted metadata.

g) "Metadata" means: (i) information associated with or embedded in a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when an electronic file or Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production; and/or (iv) information collected during the course of collecting documents or ESI, such as file names, file paths, system dates, name of the media device on which it was stored, or the custodian or noncustodial data source from which it was collected.

h) "Native File(s)" or "Native Format" means ESI that has an associated file structure defined by the creating or viewing application in the file type for (or of) the application in which such ESI is normally created, viewed, and/or modified in the usual course of business and its regularly conducted activities.

i)    "OCR" means optical character recognition, generating a text from an image of text using software and making such text searchable using appropriate software.

j)    "Producing Party" means the party or non-party producing Documents or ESI under this Protocol.

k)    "Receiving Party" means the party receiving production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or pursuant to initial production of documents identified in the party's Rule 26(a) disclosures.

l)    "Search Term" means a word or a string of words or phrases joined by proximity and Boolean connectors and other syntax designed to capture potentially relevant ESI.

## 4.    PRESERVATION

The parties understand and have complied with their preservation obligations to retain and preserve all documents, in paper and electronic form, that may be relevant to the claims or defenses in the matter, including, but not limited to, in files or on workstations, laptops, tablets, network servers, USB drives, other external media, handheld devices, or voicemail systems, , as applicable.

The parties have already taken affirmative actions to ensure that any automatic deletion processes that impact their relevant data systems have been suspended, if possible. The parties understand that failure to preserve documents and ESI may result in sanctions.

## 5.    METHOD OF PRODUCING ELECTRONIC DISCOVERY

a)    **ESI SOURCES**. Within twenty-eight (28) days of the entry of this Order, the parties will identify and describe the ESI systems or devices that may

house potentially relevant, non-privileged data, including both custodial and noncustodial sources of ESI (e.g., email, instant messaging, shared drives, network storage, local hard drives, mobile phone applications, etc.) (collectively, "ESI Sources"). If the producing party asserts that any of these ESI Sources should not be searched, the producing party shall state, in writing, the basis for such a contention. The parties agree to meet and confer in good faith regarding the basis for those assertions.

b) **INACCESSIBLE DATA.** To the extent that a party wishes to exclude any additional categories of documents and ESI from preservation or production that a party asserts is not proportionate or reasonably accessible under the Federal Rules of Civil Procedure, the party will disclose the document category and specify the extent of the burden, and the parties will meet and confer in an effort to resolve the issue.

c) **CUSTODIANS**. Within twenty-eight (28) days of the entry of this Order, the parties shall identify those persons whose files are likely to contain documents relating to the subject matter of this litigation (each a "Custodian"), identifying the proposed Custodian's job title, a brief description of their role and an overview of the types of relevant documents likely to be in their possession, custody, or control (e.g. communications with claimants, training materials). Within ten (10) days of receipt of the aforementioned list of Custodians, the parties shall meet and

confer regarding proposed custodians in a good faith attempt to come to an agreement. If, after a good faith attempt, the parties are unable to come to an agreement regarding custodians, they shall immediately pursue the dispute process set forth in Section 15 of this Order. The parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional Custodians be searched and meet and confer regarding such a request.

d)    **SEARCH METHODOLOGY.** After the date of entry of this Order, no producing party shall endeavor to produce documents without first conferring with the receiving party regarding the intended method of searching and collection of documents for production. To the extent the producing party is filtering documents using search terms, the parties shall meet and confer to develop a list of mutually agreeable search terms and protocols. To the extent the parties are unable to come to an agreement regarding reasonable search terms, the producing party shall provide a hit list which indicates the number of documents that are responsive to any reasonable number of terms that are not agreead to by the parties to enable the receiving party to better assess the appropriateness of such terms.

To the extent the producing party collects documents using "targeted" collections (from custodians or sources based on documents selected by custodians or by collecting folders identified as containing responsive materials), the producing

Case 1:24-cv-10678-RMB-MJS    Document 59    Filed 12/18/25    Page 7 of 25 PageID: 559

party must disclose which categories of information will be collected in that manner, including custodians searched, non-custodial sources searched, and date parameters applied, if any. Unless the producing party clearly indicates otherwise, it shall review each of the documents in the relevant category individually. The parties will meet and confer if there is a disagreement on the search or collection methodology.

This Stipulation does not preclude a Requesting Party from seeking information pertaining to a Producing Party's network design, types of databases, database dictionaries, access control lists and security access logs and rights of individuals to access systems and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.Upon reviewing the initial production of documents, and conducting other investigation and discovery, the receiving party may request additional search terms be used for good cause and the parties will meet and confer regarding such request.

e) **TECHNOLOGY ASSISTED REVIEW**. Should a party desire to leverage Technology Assisted Review or Continuous Active Learning or another technology review tool to limit review and production, the parties agree to meet and confer to determine whether such methods are appropriate in this action. If the

parties agree that use of any particular technology is appropriate, the parties agree to meet and confer regarding the parameters under which such tools shall be used.

## 6.    PRODUCTION FORMATS

The parties agree to make rolling productions.

a)    Documents shall be produced in the following formats:

   i.    **Electronic Production of Paper Documents**. Documents that are maintained in paper format shall be scanned as full color document level PDF images, or black and white images at 300 x 300 DPI resolution or greater, in Group IV compression single-page TIFF (or JPG for color images) image format that represents the full and complete information contained in the original Document. If color is necessary to understand the document or the TIFF image is illegible, the document must be produced in color and/or in PDF. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the Document is obscured by the affixed notes, the Document and note shall be scanned separately. Documents produced under this agreement shall also be produced with the associated OCR text, and with a load file. If there is an indication that the OCR of a Document produced under this Section is corrupted or materially flawed, the Receiving Party reserves all rights to challenge the quality of the OCR and seek reproduction of the Document;

   ii.    **Electronically Stored Information.** Except as set forth in paragraph 5.g below, Document images shall be generated from electronic Documents as full color document level PDF images, or in a set of 300 DPI, black and white Group IV TIFF images or color JPEG images, one file per page, that reflects the full and complete information contained on the original document, together with a load file containing required metadata as set forth in Section 13 of this Protocol. If color is material to the understanding of the document, the documents shall be produced in color. The Receiving Party may request reproduction of

additional documents in color. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document, and there should be OCR text generated after the redaction has been applied;

    iii.    **File Structure.** The Producing Party shall produce the sets of files set forth in Paragraphs 5.b-d for all produced documents:

b)    <u>Load Files:</u> Each production shall include a .dat metadata load file, which is a delimited text file format. The first row of the file shall contain a list of metadata columns. Each subsequent row shall contain the metadata for a single document. Each column of each row shall contain one metadata value, with values encapsulated by a special "quote" character and columns separated by a special "separator" character throughout.

    i.    The load file should use Concordance standard delimiters, a thorn (þ, ASCII character 231) as a quote character and the special, non-printing character DC4 (ASCII character 20) as a separator.

    ii.    First line must contain the column/field names.

    iii.    Each subsequent row must contain the metadata for one document.

    iv.    Every row must have the same number of columns/fields (empty values are acceptable).

    v.    Text must be encoded in either ASCII, UTF-8, or UTF-16.

    vi.    An Image Load File which associates each Bates number with its corresponding single-page TIFF or multi-page PDF image file for each Document included in the production in Opticon (*.opt) format.

    vii.    Load Files should be placed in the Data folder of the production in the root directory.

c)    <u>**Extracted Text and OCR Files (.txt files)**</u>

    i.    A single text file for each document containing all the

- 9 -

document's pages, in text.

ii.    Filenames should be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the document.

iii.    No other information should be provided in text filenames, including confidentiality status.

iv.    Files should be placed in the text/ subdirectory.

d)    **Image Files:**

i.    Full color document level PDF files, or;

ii.    A single image per TIFF file for each page in a document. No multi-page TIFF image files.

iii.    Filenames should be in the form: <Bates num>.tif/.jpeg, where <Bates num> is the BATES number of the page of the document.

iv.    A single-page placeholder image should be produced in the images directory for each native file with the same bates number as the native file.  The placeholder shall state "DOCUMENT PRODUCED IN NATIVE FORMAT" and contain the bates stamp on the lower right of the page and the confidentiality designation, if applicable, on the lower left.

v.    Files should be placed in the images/ subdirectory.

vi.    No other information should be provided in image filenames, including confidentiality status.

e)    **Native Files**

i.    File names must be named by the Bates number of the first page of the associated document.

ii.    The filename must retain the file extension corresponding to the original native format; for example, an Excel 2003 spreadsheet's extension must be .xls.

iii.    Each filename, including extension, must correspond to the NativePath metadata field in its corresponding document's row

in the load file.

    iv.    Files should be placed in the natives/subdirectory.

f)    **Resolution of Production Issues:** Documents and ESI that cannot be read because of imaging or formatting, or other technical problems shall be identified by the Receiving Party. If the Producing Party is unable to readily resolve the issues with the identified Documents or ESI, the Producing Party and the Receiving Party shall meet and confer to attempt to resolve problems consistent with the Federal Rules of Civil Procedure and the Court's Scheduling Order, to the extent the problem(s) are within the parties' control.

**Native Format Documents**: Notwithstanding the foregoing provisions of this paragraph, the parties recognize that it may be appropriate for certain types of Documents to be produced in Native Format. Therefore, the Producing Party shall produce all spreadsheets, PowerPoints, and audio/video files in native format unless there is an agreement to the contrary. The Receiving Party may also request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed, or for which there is no visual representation. Any file produced in native format shall include Bates stamped native placeholder image ("Slip Sheet(s)") representing the native documents for purposes of document identification and confidentiality designations.

## 7.    PRODUCTION METHOD

Production media may include use of AES-256 or an equivalent, industry-accepted method of encryption to preserve security of production deliverables and will be sent via encrypted CitrixShareFile, FTPS, or SFTP link. On the occasion in which a particular production is of a size that would make sending it via one of the identified methods above impractical, the parties may agree to send encrypted physical media such as a Hard Drive or USB, after first conferring with the

- 11 -

Receiving Party. Passwords for encrypted media will be sent separately from the media itself.

a)    **Identifying Productions**. Each production shall be assigned a volume name, production number, or other unique identifying label corresponding to the identity of the producing party and the Bates ranges of the documents in that production (*e.g.*, "GEICO Production 1, GEICO-0000001 – GEICO-0000456"). Productions shall include text referencing the case name. Further, any replacement production shall cross-reference the original production, clearly identifying that it is a replacement and cross-referencing the Bates range that is being replaced. To the extent practicable, and if requested by the Receiving Party, the production should also be labelled so as to correspond to the categories of documents sought in the discovery requests.

## 8.    DOCUMENTS UNITIZATION

The Parties will make their best efforts to unitize the documents correctly. When scanning paper documents into Document Images, they shall be unitized in a manner to maintain the document(s) and any attachments, as they existed in their original state.

## 9.    ATTACHMENT FAMILIES

For electronic documents, the relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder

containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained using the Begin Family and End Family (or similarly named) fields of the load file. Document Images generated from attachments to emails stored in Native Format shall be produced contemporaneously and sequentially immediately after the parent email in their Bates numbering, when possible.

**10.     DUPLICATES**

A Producing Party who has more than one identical copy of an electronic document (i.e., the documents are actual duplicates) need only produce a single copy of that document. A Producing Party need not produce the same electronically stored information in more than one form. Deduplication will be done on only exact duplicates and shall be based on the MD5 or SHA1 hash values of Native Version of documents. Where any such documents and ESI have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) to be deduplicated.

a)     De-duplication shall be performed only at the document family level so that attachments are not de-duplicated against identical stand-alone versions of such documents and vice versa.

b)     Attachments to e-mails or other documents shall not be disassociated from the parent e-mail or document even if they are exact duplicates of another

document in the production.

c)    Paper documents shall not be eliminated as duplicates of ESI.

d)    Each Custodian of a deduplicated document shall be identified in the AllCustodians metadata field and each File Path shall be identified in the applicable metadata field where reasonably available.

## 11.    BATES NUMBERING

Each Producing Party shall Bates number its production(s) as follows:

a)    Document Images. Each page of a produced Document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source document. The Bates Numbers shall be enumerated as defined above in Definitions. No other legend or stamp will be placed on the Document Image other than a confidentiality legend (where applicable), redactions, and the Bates Number identified above.

b)    Native Format Documents. In the event Native Format Documents are produced, in order to preserve the integrity of those Native Format Documents, no Bates Number, confidentiality legend or internal tracking number should be added to the content of the Native Document. Each Native Format Document shall be named in accordance with paragraph 5.e.ii of this Protocol.

12.    **DATABASES**

To the extent discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the Parties shall meet and confer to discuss the contents of the database, including an understanding of which fields are relevant, and the preferred production format. The Parties shall work in good faith to identify queries to be made for discoverable information and to ensure any data produced is produced in a usable format. To the extent reasonably available, the Producing Party shall provide a data dictionary, reference table, or other information sufficient to provide a reasonable understanding of the relevant contents of the structured database. Nothing in this ESI Protocol precludes a party from seeking full disclosure or access to a database under the Federal Rules of Civil Procedure.

13.    **PRIVILEGE LOGS**

With respect to documents protected by the attorney-client or work-product privilege that are generated by the Parties or their counsel of record after the filing of the complaint, the Parties are not required to include any such information in the privilege log.

The Producing Party will produce privilege logs in spreadsheet or .csv format. A Producing Party will produce a privilege log within 15 days of the date of production in which documents or information was withheld on privileged grounds,

unless the Parties confer in good faith and agree to a different date for production of a privilege log.

If the Producing Party withholds documents from discovery because they are allegedly protected by a privilege recognized by state or federal law, the Producing Party shall provide a privilege log that provides the following information to the extent it is reasonably available to the Producing Party:

a)    A sequential number associated with each privilege log document;

b)    The bates number of the document (for produced documents that were slipsheet and produced as part of non-fully privileged families or for redacted documents);

c)    The date of the document;

d)    The identity of the author;

e)    The identity of the recipients, copyees, or blind copyees;

f)    The title or subject;

g)    The nature of the privilege asserted (i.e., attorney-client privilege; work product doctrine);

h)    Identification of those persons who are attorneys; and

i)    A description of the nature of the document that, without revealing information that is itself privileged or protected, will enable other parties to assess the claim of privilege or immunity.

Fields (b)-(f) may be generated using available metadata, including author or to/from/cc/bcc names; the subject matter or title; and date created. The Producing Party shall provide in its log all of the information listed in Paragraphs 12(a-i). The

Receiving Party reserves the right to request additional information as required by the Federal Rules of Civil Procedure.

**14.    502(d) ORDER AND CLAWBACK PROCEDURE**

This Agreement is entered pursuant to Fed R. Evid. 502(d).  Subject to the provisions of this Agreement, if the Producing Party discloses information in connection with the pending litigation that the Producing Party thereafter claims any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law ("Privileged Information"), the disclosure of that Privileged Information will not constitute or be deemed a waiver or forfeiture—in this or any other action—of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Privileged Information and its subject matter.

a)    This Agreement protects any disclosure of Privileged Information, whether that disclosure is inadvertent or otherwise.

b)    Each Party is entitled to decide, in its sole discretion, the appropriate degree of care to exercise in reviewing materials for privilege.  Irrespective of the care that is actually exercised in reviewing materials for privilege, the Court hereby orders that disclosure of Privileged Information in discovery conducted in this litigation shall not waive any claim of privilege or work product protection that the

Producing Party would otherwise be entitled to assert with respect to the Privileged Information and its subject matter.

c)    A Producing Party must notify the Party receiving the Privileged Information, in writing, that it has disclosed that Privileged Information without intending a waiver by the disclosure and provide a privilege log for that Privileged Information.  Upon receipt of notification, the Receiving Party shall immediately take all reasonable steps to destroy or return all copies, electronic or otherwise, of such document or other information, and shall provide a certification that it will cease further review, dissemination, and use of the Privileged Information. If the Receiving Party has already disclosed the Privileged Information, the Receiving Party must take reasonable steps to retrieve the information, and must promptly inform the Producing Party of each person the Privileged Information was disclosed to, and the steps taken to retrieve the information. If the Receiving Party intends to challenge the claim of privilege, the Receiving Party shall so inform the Producing Party and sequester the Privielged Information until resolved by the Parties or the Court.

d)    This Agreement shall be interpreted to provide the maximum protection allowed to the Disclosing Party by Fed. R. Evid. 502(d).

e)    Notwithstanding the foregoing, the Parties agree that any document used as an exhibit by any Party in a deposition or served as part of or attached to an

expert report or court filing in this action (with the exception of a motion pursuant to this Section) that a Producing Party does not claw back within twenty-one (21) calendar days of its use as an exhibit in a deposition or service as part of or attached to an expert report or court filing, shall not be eligible to utilize 502(d) for clawback of that specific document under this Section.

## 15. PROCESSING OF NON-PARTY DOCUMENTS

A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Protocol with the subpoena and ask that the non-party produce documents in accordance with the specifications set forth herein. The parties understand that non-parties are not required to comply with this protocol.

The Issuing Party is responsible for producing to all other Parties any documents obtained pursuant to a subpoena to any non-party. To the extent practical given the data volume, productions by a non-party should be produced by the Issuing Party to all other Parties within seven (7) days of the non-party's production to the Issuing Party.

Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

16.    **DISCOVERY AND ADMISSIBILITY**

Nothing herein shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

17.    **METADATA**

The following Metadata fields or similar fields must be provided in the Metadata load file to the extent such fields are available, without posing undue burden on the Producing Party to produce such fields, for the data collected:

| Field Name | Description |
| --- | --- |
| BegBates | First Bates Number |
| EndBates | Last Bates Number |
| BegBatesAttach | First Bates Number of the first document of a family |
| EndBatesAttach | Last Bates Number of the last document of a family |
| Custodian | Custodian of a file when collected |
| AllCustodians | All Custodians of a document when the Producing Party incorporates deduplication in their production workflow |
| PgCount | Number of pages of a document |
| FileSize | Size in bytes of the native file |
| MD5Hash | MD5 hash value calculated for a document |
| TextPath | Relative file path to the produced extracted text or OCR file of the document. A Text folder on the production deliverable should contain a separate text file for each document named with the corresponding BegBates. If a party OCRs documents for its own benefit, that OCR will be provided here. OCR text files shall be provided for documents with redactions. |
| Confidentiality | Populated for all documents with a confidentiality designation pursuant to any |

| Field Name | Description |
|---|---|
|  | applicable Protective Order in addition to stamping of production images, i.e. Confidential or Highly Confidential. |
| **Redacted** | "Has Redactions" "Y" or "Yes" populated for all redacted documents |
| **FileName** | Original file name of a document, including any extensions |
| **FileType** | Native file application (e.g., Adobe, Microsoft Excel) or native file MIME type. |
| **FileExtension** | File Type Extension (e.g., MSG, XLS) |
| **NativePath** | Relative file path to the produced native file. A Natives folder on the production deliverable should contain a separate native file for each document named with the corresponding BegBates. |
| **Title** | Extracted title of a non-e-mail document |
| **Author** | Extracted author of a non-e-mail document |
| **DateTimeCreated** | Date and time the file was created. |
| **DateTimeLastModified** | Date and time the file was last modified. |
| **LastModifiedBy** | Identification of person(s) who last modified a Document. |
| **From** | Name (when available) and e-mail address (when available) of the sender of an e-mail |
| **To** | Name (when available) and e-mail address(es) (when available) of the recipient(s) in the To line of an e-mail |
| **CC** | The name(s) (when available) and e-mail address(es) (when available) of the recipient(s) in the CC line of an e-mail |
| **BCC** | The name(s) (when available) and e-mail address(es) (when available) of the recipient(s) in the BCC line of an e-mail |
| **EmailSubject** | Subject of an e-mail |
|  |  |
| **InReplyTo** | Message ID of email that instant email is in reply to. |
| **DateTimeReceived** | Date and time an e-mail was received |
| **DateTimeSent** | Date and time an e-mail was sent |

| Field Name | Description |
|---|---|
| FilePath | File path in which a native Loose File or folder in which an e-mail was stored within a Custodian's mailbox |
| AllPaths | Identification of all file paths for duplicate copies |
| AttachCount | Number of files attached to an e-mail or parent document |
| Attach Names | Native file names of each individual attachment, separated by semicolons. |
| Track Changes | Document has track changes (Y/N). |
| Hidden Content | Identifies documents with hidden content (i.e. hidden rows, columns, sheets, or slides). |

## 18.    DISPUTE PROCESS

For any dispute regarding the production of Documents and/or ESI pursuant to this ESI Protocol, including but not limited to disputes related to proposed search terms and custodians, the Parties shall meet and confer in good faith prior to seeking judicial relief and otherwise follow the Court's discovery dispute procedures.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD

Dated: December 16, 2025.          CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.

By:_____/s/ James E. Cecchi_____
          JAMES E. CECCHI

James E. Cecchi
Jason H. Alperstein
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

- 22 -

jcecchi@carellabyrne.com
alperstein@carellabyrne.com

Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

David S. Almeida
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Telephone: (708) 529-5418
david@almeidalawgroup.com

Courtney E. Maccarone
Mark Svensson
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
cmaccarone@zlk.com
msvensson@zlk.com

Leigh S. Montgomery*
**EKSM, LLP**
1105 Milford Street
Houston, Texas 7706
Telephone: (888) 350-3931
Facsimile: (888) 276-3455
lmontgomery@eksm.com

A. Brooke Murphy*
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700

Oklahoma City, OK 73108
Telephone: (405) 389-4989
abm@murphylegalfirm.com

Amber L. Schubert*
**SCHUBERT JONCKHEER
& KOLBE LLP**
2001 Union St Ste 200
San Francisco, CA 94123
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
aschubert@sjk.law
Marc H. Edelson*
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
medelson@edelson-law.com

Daniel Srourian, Esq.*
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
daniel@slfla.com

Danielle L. Perry*
**MASON LLP**
5101 Wisconsin Avenue, NW, Suite 305
Washington, DC 20016
Telephone: (202) 429-2290
dperry@masonllp.com

Gary M. Klinger*
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
gklinger@milberg.com

- 24 -

*Admitted Pro Hac Vice

*Counsel for Plaintiffs and the Proposed Class*

Dated: December 16, 2025          **MULLEN COUGHLIN LLC**


          /s/ Richard M. Haggerty
          Richard M. Haggerty
          **MULLEN COUGHLIN LLC**
          426 W. Lancaster Avenue, Suite 200
          Devon, PA 19333
          Telephone: 267-9304770
          rhaggerty@mullen.law

          *Attorneys for Defendant American Neighborhood Mortgage Acceptance Company, LLC d/b/a AnnieMac Home Mortgage*


IT IS ORDERED that the foregoing Agreement is approved.

Dated:  Dec 18, 2025


HON. MATTHEW J. SKAHILL, U.S.M.J.