**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| |
|---|
| *In re: AnnieMac Data Breach Litigation* |

Case No. 1:24-cv-10678-RMB-MJS

District Judge Renée Marie Bumb

Magistrate Judge Matthew J. Skahill

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................................iv

I.      INTRODUCTION .................................................................................1

II.     BACKGROUND FACTS & PROCEDURAL HISTORY ...........................3

        A.      The Data Security Incident ........................................................3

        B.      Plaintiffs' Claims and Procedural History ..................................4

III.    SETTLEMENT OUTLINE......................................................................6

        A.      Class Definition ........................................................................6

        B.      Settlement Benefits ...................................................................6

                1.      Monetary Benefits .........................................................7

                        a.      Unreimbursed Economic Losses.........................7

                        b.      Pro Rata Cash Payment......................................8

                2.      Credit Monitoring Services ............................................8

                3.      Equitable Relief; Business Practice Commitments ...................9

                4.      Costs of Notice and Settlement Administration, Attorneys'
                        Fees, Costs and Expenses and Service Awards.........................9

        C.      Class Notice ...........................................................................10

        D.      Release...................................................................................11

        E.      Attorneys' Fees and Service Awards........................................11

IV.     ARGUMENT .......................................................................................11

i

A.     Legal Standards....................................................................11

B.     The Court Should Certify the Proposed Class for Settlement Purposes.....................................................................12

    1.     The Settlement Class Is So Numerous that Joinder Is Impracticable ...............................................................13

    2.     Questions of Law and Fact Are Common to the Settlement Class ....................................................................13

    3.     Plaintiffs' Claims and Defenses Are Typical of the Settlement Class ....................................................................14

    4.     Certification Is Also Appropriate Because Common Issues Predominate Over Individualized Ones, and Class Treatment Is Superior .......................................18

       a.     Predominance ...............................................18

       b.     Superiority....................................................20

C.     The Settlement Terms Are Fair, Adequate, and Reasonable.............21

    1.     The Complexity, Expense, and Likely Duration of the Litigation ...........................................................23

    2.     The Reaction of the Class to the Settlement............................25

    3.     The Stage of the Proceedings and the Amount of Discovery Completed ...........................................................25

    4.     The Risks of Establishing Liability and Damages ..................26

    5.     The Risks of Maintaining the Class Action Through Trial ......28

    6.     The Ability of Defendant to Withstand a Greater Judgment....29

    7.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All Attendant

Risks of Litigation ...................................................................30

8. Relevant *Prudential* Factors .......................................................32

D. The Court Should Approve the Proposed Notice Plan .......................32

E. The Court Should Approve a Schedule Leading Up to the Final Approval Hearing ...............................................................................34

V. CONCLUSION .....................................................................................34

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Alfaro v. First Advantage LNS Screening Sols., Inc.*,
  2017 U.S. Dist. LEXIS 131688 (D.N.J. Aug. 16, 2017) ................................. 21

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................. 12, 18, 20

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ........................................................................................ 18

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) .................................................................... 20

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006) ..................................................................... 15, 16

*Bizzarro v. Ocean Cty.*,
  2009 U.S. Dist. LEXIS 48354 (D.N.J. June 9, 2009) ..................................... 16

*Castro v. Sanofi Pasteur Inc.*,
  2017 U.S. Dist. LEXIS 174708 (D.N.J. Oct. 20, 2017) ................................... 33

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ..................................................................... 25, 26

*Dartell v. Tibet Pharms., Inc.*,
  2017 WL 2815073 (D.N.J. June 29, 2017) ..................................................... 24

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ........................................................................... 12

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ........................................................................................ 33

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ........................................................................................ 28

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ............................................................... 22, 23, 26

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010)....................................................27

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013) ...........................................................................28

*In re Heartland Payment Systems, Inc. Customer Data Security
  Breach Litig.,*
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...........................................................19

*In re Johnson & Johnson Derivative Litig.*,
  900 F. Supp. 2d 467 (D.N.J. 2012) ...................................................................25

*Kanefsky v. Honeywell Int'l Inc*,
  2022 WL 1320827 (D.N.J. May 3, 2022) .........................................................22

*Keefer v. Fulton Bank, N.A.*,
  No. 1:23-md-03056 (N.D. Ga.), ECF No. 106....................................................31

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012)..............................................................................28

*McGee v. Cont'l Tire N. Am., Inc.*,
  2009 WL 539893 (D.N.J. Mar. 4, 2009)......................................................29, 30

*McLennan v. LG Elecs. USA, Inc.*,
  2012 WL 686020 (D.N.J. Mar. 2, 2012) ..........................................................26

*McPherson v. American Bank Systems, Inc.*,
  No. 20-cv-1307-G, ECF Nos. 54, 73 ................................................................30

*In re Mercedes-Benz Antitrust Litig.*,
  213 F.R.D. 180 (D.N.J. 2003) ..........................................................................19

*In re Modafinil Antitrust Litigation*,
  837 F.3d 238 (3d Cir. 2016)..............................................................................13

*In re Morgan Stanley Data Sec. Litig.*,
  No. 1:20-cv-05914-AT (S.D.N.Y), ECF No. 156 ........................................30, 21

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016).........................................................15, 16, 17, 23

*In re NFL Players Concussion Injury Litig.*,
  775 F.3d 570 (3d Cir. 2014) ........................................................................12

*O'Brien v. Brain Rsch. Labs, LLC*,
  2012 WL 3242365 (D.N.J. Aug. 9, 2012) .....................................................29

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
  2017 WL 2734714 (D.N.J. June 26, 2017) ....................................................25

*In re Pet Food Prods. Liab. Litig.*,
  2008 WL 4937632 (D.N.J. Nov. 18, 2008) ....................................................12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ................................................................*passim*

*In re Remicade Antitrust Litig.*,
  2022 U.S. Dist. LEXIS 136774 (E.D. Pa. Aug. 2, 2022) ....................17, 18, 19

*Rodriguez v. Nat'l City Bank*,
  726 F.3d 372 (3d Cir. 2013) .........................................................................14

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) .........................................................................16

*Shapiro v. Alliance MMA, Inc.*,
  2018 WL 3158812 (D.N.J. June 28, 2018) ....................................................33

*Smith v. Merck & Co.*,
  2019 U.S. Dist. LEXIS 120879 (D.N.J. July 17, 2019) .............................14, 15

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) .....................................................................18, 19

*Tower v. Portugueses*,
  2025 U.S. Dist. LEXIS 77128 (D.N.J. Apr. 22, 2025) ....................................33

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005) ...................................................................19, 21

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .....................................................................................14

vi

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)..................................................................*passim*

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
    899 F. Supp. 1297 (D.N.J. 1995) ...................................................................26

**Statutes**

New Jersey Consumer Fraud Act (N.J.S.A. §§ 56:8 et seq.) ...................................2

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................12, 14, 33

Fed. R. Civ. P. 23(a)......................................................................12, 13, 14, 15, 16

Fed. R. Civ. P. 23(b)............................................................................12, 18, 20, 21

Fed. R. Civ. P. 23(c)..................................................................................32

Fed. R. Civ. P. 23(e)........................................................................3, 11, 12, 22, 32, 34

Plaintiffs William Sojka, David Jacob, Paul ValenCourt, Jaime Keefer, Sherice Dudley, Sean Long, Micah Ellis, Seana Greene, Franklin Montenegro, and Alec Wray ("Plaintiffs" or "Settlement Class Representatives"), on behalf of themselves and the putative Settlement Class, move the Court to preliminarily approve the class action settlement with American Neighborhood Mortgage Acceptance Company, LLC ("AnnieMac" or "Defendant") (together, the "Parties"), as "fair, adequate, and reasonable." *See* Settlement Agreement, attached to the Declaration of James E. Cecchi ("Cecchi Decl.") as **Exhibit 1** ("Settlement," "Settlement Agreement," or "S.A.").[1]

## I.    INTRODUCTION

Between August 21, 2024, and August 23, 2024, AnnieMac experienced unauthorized access to its computer systems (the "Data Security Incident"). Plaintiffs allege that the Data Security Incident exposed Defendant's customers' Personal Information, including but not limited to their names, Social Security numbers, date of births, official State or government issued driver's licenses or identification numbers. *See* Consolidated Class Action Complaint [Dkt. No. 23] ("Complaint") or "Compl."), ¶¶ 41-43. On November 14, 2024, Defendant began notifying Plaintiffs and the Settlement Class—numbering approximately 171,074

---

[1] All capitalized terms used herein should be given the meaning assigned in the Settlement Agreement.

people—about the Data Security Incident. S.A. ¶ 60.

On February 21, 2025, Plaintiffs filed their Complaint asserting the following claims: (i) negligence; (ii) negligence per se; (iii) breach of implied contract; (iv) unjust enrichment; (vi) invasion of privacy; (vii) breach of fiduciary duty; and (viii) violations of the New Jersey Consumer Fraud Act (N.J.S.A. §§ 56:8 et seq.).

Shortly thereafter, following Rule 12 motion practice, the parties agreed to explore early resolution. S.A. ¶¶ 6-7. After a full day of mediation with Judge Diane Welsh (ret.) of JAMS, the Parties were unable to reach a settlement. *Id.* ¶ 7. Thereafter, the Parties began the process of engaging in formal discovery, including exchanging written discovery and producing documents. *Id.* ¶ 8. Throughout the discovery process both Parties remained open to the possibility of resolution of this matter and, after numerous rounds of back-and-forth informal negotiations, the Parties eventually reached an agreement in principle on the core terms of the Settlement. *Id.* ¶ 9.

The Settlement provides timely and excellent benefits to the Settlement Class. Under the Settlement, AnnieMac will fund a $2,000,000.00 non-reversionary common fund from which Settlement Class Members are eligible to recover monetary benefits, including either compensation for unreimbursed economic losses or a *pro rata* cash payment expected to be $75 per claimant, as well as two years of credit monitoring and identity protection. *Id.* ¶¶ 64, 82-83. In addition, AnnieMac

2

has implemented additional data security measures at its own expense and separate from the other settlement benefits for the Settlement Class. *Id.* ¶ 84. As detailed herein, the Settlement satisfies the preliminary approval standard as it is likely to be approved as fair, reasonable, and adequate.

Accordingly, pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs move the Court for an order certifying the class for settlement purposes only, preliminarily approving the proposed settlement agreement, and approving the content and manner of the proposed notice process. In addition, Plaintiffs respectfully request that the Court set deadlines for exclusions, objections, and briefing on Plaintiffs' motion for final approval and application for an award of attorneys' fees and expenses, and set a date for the Final Approval Hearing.

## II. BACKGROUND FACTS & PROCEDURAL HISTORY

### A. The Data Security Incident

Defendant is a private mortgage loan company based in New Jersey, with branches spanning throughout the United States, and provides a myriad of financial home mortgage services to its customers. Compl. ¶¶ 21-22. To run its business, AnnieMac collects Personal Information from its customers. *Id*. ¶¶ 25, 26. Between August 21, 2024, and August 23, 2024, AnnieMac experienced unauthorized access to its computer systems (the "Data Security Incident"), and which may have impacted the Settlement Class's sensitive Personal Information, including their

3

names and Social Security numbers. *Id*. ¶ 25.

### B.    Plaintiffs' Claims and Procedural History

Plaintiffs are current and former customers as well as potential data breach victims. Compl. ¶¶ 56, 72, 87, 104, 120, 136, 150, 167, 183-184, 197. Shortly following Defendant's notice of the Data Security Incident, between November 22 and December 13, 2024, Plaintiffs filed their respective complaints in this Court, and all actions arise from the same Data Security Incident (the "Related Actions"). Prior to filing their respective cases, Plaintiffs' counsel conducted extensive pre-suit discovery to ascertain all publicly available details about the cause, scope, and result of the data breach, as well as about the damages suffered by Plaintiffs and the Class. Cecchi Decl. ¶ 4.

All related actions were consolidated on January 22, 2025, and the Court appointed James E. Cecchi as Interim Lead Counsel. Dkt. No. 10. Thereafter, Plaintiffs filed their Complaint. Dkt. No. 23.

AnnieMac filed its Motion to Dismiss Plaintiffs' Complaint on April 29, 2025, with Plaintiffs filing their opposition to the Motion on June 2, 2025. Dkt. Nos. 38, 40. Defendant responded in support of its Motion on June 10, 2025. Dkt. No. 43. Shortly thereafter, recognizing the benefits of early resolution of Plaintiffs' and the Class's claims—the Parties discussed potential resolution and agreed to an in-person mediation before Judge Diane Welsh (ret.) from JAMS. S.A. ¶ 7. Prior to the

mediation, Plaintiffs requested, and AnnieMac produced, key information to inform the settlement negotiations, including without limitation the size of the Settlement Class, facts concerning the Data Security Incident, and other pertinent information. Cecchi Decl. ¶ 8.

On September 24, 2025, the Parties participated in a full-day mediation with Judge Welsh, a mediator experienced in resolving data breach cases. *Id.* ¶ 9. Under her guidance, the Parties negotiated at "arm's-length," communicating their positions through the mediator and evaluating the strengths and weaknesses underlying their claims and defenses. *Id.* After a full day of mediation, the Parties were unable to agree to a settlement in this matter. *Id.* ¶ 11. Following the unsuccessful mediation, the Parties began engaging in formal, written, discovery while simultaneously continuing their negotiations in the following months. *Id.* ¶ 12. In June 2026, the Parties reached agreement on the key terms of the Settlement. *Id.* In the following weeks, the Parties diligently negotiated and circulated drafts of the Settlement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon Kroll Settlement Administration, LLC, as the Settlement Administrator. *Id.* ¶ 13. The Settlement Agreement was finalized and executed on July 27, 2026. *Id.* ¶ 14. Settlement Class Counsel has successfully negotiated the Settlement of this matter to the benefit of Plaintiffs and Settlement Class Members. *Id.* ¶ 15.

5

## III.    SETTLEMENT OUTLINE

The Settlement Agreement specifies how to implement the Parties' settlement from start to finish, including how to define the Settlement Class, the benefits they will receive, how to handle claims, and how Plaintiffs may petition for fees and service awards.

### A.    Class Definition

The Settlement Agreement defines the Settlement Class as "[a]ll individuals residing in the United States whose Personal Information was compromised in the Data Security Incident affecting AnnieMac on or around August 2024, including all those who received notice of the Data Security Incident." S.A. ¶ 60. Excluded from the Settlement Class are (i) Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, and any successor or assign; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and immediate family; and (iv) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Security Incident or who pleads *nolo contendere* to any such charge. *Id*.

### B.    Settlement Benefits

The Settlement establishes a Two Million Dollar ($2,000,000.00) non-

6

reversionary common fund (the "Settlement Fund") from which AnnieMac will provide Settlement Class Members with timely benefits targeted at remediating any losses they may have suffered as a result of the Data Security Incident. S.A. ¶ 64. The Settlement provides the following benefits to all Settlement Class Members who submit a valid claim:

### 1. Monetary Benefits

#### a. Unreimbursed Economic Losses

Under the Settlement Agreement, Settlement Class Members may make claims to recover up to $5,000 of documented unreimbursed economic losses, defined as any unreimbursed out-of-pocket losses that are incurred as a result of or are fairly traceable to the Data Security Incident. S.A. ¶ 83(a). Examples of unreimbursed economic losses include but is not limited to: fraud or identity theft, professional fees including attorneys' fees, accountant fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after mailing of the notice of Data Security Incident, through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id*. To claim this benefit, Settlement Class Members must provide third-party documentation to support these losses as well as self-prepared documents such as handwritten receipts or notes, so long as they are supported by third-party

documentation. *Id*. ¶¶ 83(a) (i)-(iii).

Significantly, any Settlement Class Member that files a claim for economic losses but is unable to provide sufficient third-party documentation or cure any deficiencies identified by the Settlement Administrator, will automatically receive the *Pro Rata* Cash Payment option. *Id*. ¶ 83(a)(iv).

### b.   Pro Rata Cash Payment

Additionally, Settlement Class Members are eligible to receive a *pro rata* cash settlement payment estimated to be $75. *Id*. ¶ 83(b). Importantly, Settlement Class Members are not required to provide any documentation to claim this benefit. *Id*. The amount of this cash payment will be increased or decreased on a *pro rata* basis, depending upon the number of valid claims filed and the amount of funds available in the Net Settlement Fund for these payments. *Id*.

### 2.   Credit Monitoring Services

All Settlement Class Members will also have the ability to file a claim to receive two years of single bureau credit monitoring at no cost if they elect to enroll. *Id*. ¶ 82. These services will come with identity theft protection insurance, covering up to $1 million in losses for members who enroll. *Id*. To receive this significant benefit, Settlement Class Members must  provide a valid email address where they would like to receive the Credit Monitoring enrollment code. *Id*.

### 3.      Equitable Relief; Business Practice Commitments

Separate from, and in addition to, the other Settlement Benefits described above, AnnieMac has confirmed that it has made certain changes to its information security and will attest to these changes in a confidential declaration in support of the Settlement. *Id.* ¶ 84. Costs associated with these security-related measures will be paid by Defendant separate and apart from any other settlement benefits and separate and apart from the Settlement Fund. *Id.*

### 4.      Costs of Notice and Settlement Administration, Attorneys' Fees, Costs, and Expenses, and Service Awards

The Parties did not discuss or agree upon payment of attorneys' fees, costs, and expenses or Plaintiffs' service awards until after they agreed on all material terms of relief to the Settlement. Cecchi Decl. ¶ 11. The Settlement Fund amount provided by AnnieMac, or on behalf of AnnieMac, will pay the entirety of the Notice and Administrative, including the cost of Notice. ¶¶ 64. The Settlement Fund will also be used to pay up to $666,666.66 as attorneys' fees (or up to one-third of the total Settlement Fund), reimbursement of Class Counsel's reasonable costs and expenses, and a $5,000 service award to each Plaintiff (for a total of $50,000.00), subject to approval by the Court. *Id.* ¶¶ 124-125. Settlement Class Counsel will separately petition the Court for such fees, costs and expenses no later than 14 days prior to the Opt-Out/Objection Deadline. *Id.*

9

### C.    Class Notice

To notify the Settlement Class, the Settlement outlines how the Settlement Administrator will collect Settlement Class Member information and notify them about the settlement's terms. Within 10 days following the entry of the Preliminary Approval Order, AnnieMac will provide the Settlement Administrator with a list of the names of Settlement Class Members as well as the last known email and mailing address. *Id.* ¶ 99.

The Settlement Administrator will also create and update the Settlement website where it will post all documents relating to this case and the settlement, including all claim forms needed to submit a claim online, as well as important information regarding the case, including the date of the Final Approval Hearing. *Id.* ¶ 66. Under the Settlement Agreement, the website must allow class members to file claims "electronically" if they so choose. *Id.* ¶¶ 66, 85, 102. Then, the Settlement Administrator will notify all Settlement Class Members via direct notice using email to all Settlement Class Members for whom an email address is available, and via US mail for Settlement Class Members for whom email addresses are not available or whose email notice bounces back as undeliverable. *Id.* ¶¶ 62, 100. If a mailed notice is returned "undeliverable," the Settlement Administrator shall "use reasonable efforts", including using standard skip tracing, to identify the updated mailing

10

address and re-send the Notice. *Id.* ¶ 100. Under the Settlement Agreement, the Settlement Administrator will start this process within 30 days after the Court preliminarily approves the Settlement and the class will have 60 days from the Notice Deadline to submit a Claim Form. *Id.* ¶¶ 37.

### D.    Release

In exchange for the benefits provided by the Settlement, Plaintiffs and the Settlement Class agree to release AnnieMac from their class action claims. The Parties tailored the release to affect only those claims related to the Data Security Incident, defined as "Released Claims" under the agreement. *Id.* ¶¶ 51-53, 117-123. That release will take effect after the Court enters its "Final Approval Order and Judgment." *Id.* ¶ 117.

### E.    Attorneys' Fees and Service Awards

The Parties did not discuss or negotiate the fee or service awards until they agreed on the terms benefiting the class. Cecchi Decl. ¶ 11. As a result, the Parties avoided conflict with the Settlement Class's interests, thus fulfilling their responsibilities to the Settlement Class first. *Id.*

## IV.    ARGUMENT

### A.    Legal Standards

Rule 23(e) of the Federal Rules of Civil Procedure requires Court approval for any class-wide resolution of claims. *See* Fed. R. Civ. P. 23(e). It is well-

11

established in the Third Circuit that the settlement of class action litigation is favored and encouraged. *See, e.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("Settlement [a]greements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("There is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). Pursuant to Rule 23(e)(1)(B), the parties must "show[] that the [C]ourt will likely be able to: (i) approve the [settlement] proposal under Rule 23(e)(2); and, (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

## A.    The Court Should Certify the Proposed Class for Settlement Purposes

The propriety of certifying a class solely for purposes of settlement is well established in the Third Circuit. *See, e.g.*, *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 583 (3d Cir. 2014) ("[P]reliminary analysis of a proposed class is . . . a tool for settlement used by the parties to fairly and efficiently resolve litigation."); *In re Pet Food Prods. Liab. Litig.*, 2008 WL 4937632, at *3 (D.N.J. Nov. 18, 2008) ("Class actions certified for the purposes of settlement are well recognized under Rule 23."). Nevertheless, a settlement class, like other certified classes, must satisfy all of the requirements of Rules 23(a) and (b), though the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods., Inc. v.*

12

*Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). As demonstrated below, the proposed Settlement Class satisfies these requirements.

### 1.    The Settlement Class Is So Numerous that Joinder Is Impracticable

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). In the Third Circuit, this prong is generally satisfied where "'the named plaintiff demonstrates the potential number of plaintiffs exceeds 40[.]'" *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 249-50 (3d Cir. 2016) (*quoting Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)). As the proposed Settlement Class here numbers approximately 171,074 individuals, judicial economy would be well-served by certification. Any attempt at joinder of such a large number of individual suits over such a vast geographical location would be impractical. *See, e.g.*, *Modafinil*, 837 F.3d at 250 (noting that "[l]eading treatises have collected cases and recognized the general rule that . . . '[a] class of 41 or more is usually sufficiently numerous'") (citations omitted) (second alteration in original). Accordingly, the Settlement Class is sufficiently numerous to justify certification.

### 2.    Questions of Law and Fact Are Common to the Settlement Class

Rule 23(a)(2) requires that there be "questions of law or fact common to the

class." Fed. R. Civ. P. 23(a). This commonality requirement is satisfied "if the Named Plaintiffs share at least one question of law fact or law with the grievances of the prospective class." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 528; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do."); *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 381 (3d Cir. 2013) ("That burden is not onerous. It does, however, require an affirmative showing that the class members share a common question of law or fact.") (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 306 (3d Cir. 2011)).

Here, the commonality requirement is met because Plaintiffs can demonstrate numerous common issues exist for Settlement Class Members. For example, AnnieMac's data security safeguards were common across the Settlement Class Members, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another. This common question, and many others, alleged by Plaintiffs in their Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis for purposes of settlement. Thus, Plaintiffs have met the commonality requirement of Rule 23.

      **3.    Plaintiffs' Claims and Defenses Are Typical of the Settlement Class**

"The adequacy and typicality analyses under Rules 23(a)(3) and 23(a)(4),

14

often merge and may, therefore, be discussed together." *Smith v. Merck & Co.*, 2019 U.S. Dist. LEXIS 120879, at \*6 (D.N.J. July 17, 2019); *see also Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) ("The Supreme Court has noted that the typicality and adequacy inquires often 'tend to merge 'because both look to potential conflicts and to 'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.") (quoting *Amchem*, 521 U.S. at 626 n.20).

The typicality requirement set forth in Rule 23(a)(3) requires that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. "'[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where this is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)); *see also Russell*, 15 F.4th at 271 n.4 ("We have 'set a low threshold for typicality.'") (quoting *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016)).

Here, Plaintiffs' and Settlement Class Members' claims all stem from the same event—the Data Security Incident. Thus, Plaintiffs' claims are typical, and the typicality requirement is satisfied.

15

With regard to adequacy, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry 'serves to uncover conflicts of interest between the named parties and the class they seek to represent' [and] '[i]t assures that the named plaintiff's claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class.'" *Beck*, 457 F.3d at 296 (*quoting Amchem*, 521 U.S. at 591; *Baby Neal*, 43 F.3d at 55). This predicate to class certification mandates two steps of inquiry "designed to ensure that absentees' interests are fully pursued." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009) (quotation marks omitted). The first step of inquiry "tests the qualifications of the counsel to represent the class," while the second "seeks to uncover conflicts of interest between named parties and the class they seek to represent." *Id*. at 602. "When examining settlement classes, [the Third Circuit has] emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re NFL Players*, 821 F.3d at 431 (quoting *In re Gen. Motors Corp. Pick- Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995)). "The burden to prove that the representation is not adequate rests with the party challenging the class' representation." *Bizzarro v. Ocean Cty.*, 2009 U.S. Dist. LEXIS 48354, at *42 (D.N.J. June 9, 2009).

16

Here, Class Counsel has decades of experience as a vigorous class action litigator and is well suited to advocate on behalf of the class. *See* Cecchi Decl. ¶¶ 21, 27-28, Ex. 2. Moreover, Lead Class Counsel and counsel appointed as Executive Committee members in this litigation have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to class members. *Id.*

As for the second step of the inquiry, "[t]he 'linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.'" *In re NFL Players*, 821 F.3d at 431 (quoting *Dewey v. Volkswagen AG*, 681 F.3d 170, 183 (3d Cir. 2012)).

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Security Incident. *See In re NFL Players*, 821 F.3d at 431 (affirming the district court's conclusion that "the incentives of class members were aligned because they 'allegedly were injured by the same scheme. . . .'"). Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible to claim the same monetary benefits and the same identity theft protection services. Thus, Plaintiffs have adequately represented the Class and should be appointed as Settlement Class Representatives.

Plaintiffs therefore respectfully submit the Court should find the typicality and

17

adequacy requirements are met herein. *See, e.g.*, *In re Remicade Antitrust Litig.*, 2022 U.S. Dist. LEXIS 136774, at *18 (E.D. Pa. Aug. 2, 2022) ("Here, because the Named Plaintiff's and Class Members 'claims arise out of the same conduct and are based on the same legal theories[] . . . the Court concludes the typicality factor is satisfied.").

> **4.**  **Certification Is Also Appropriate Because Common Issues Predominate Over Individualized Ones, and Class Treatment Is Superior**

Rule 23(b)(3) authorizes class certification if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies this standard.

> a.  <u>Predominance</u>

"[T]he predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit." *Sullivan*, 667 F.3d at 297 (quoting Rubenstein, Newberg on Class Actions § 4:25 (4th ed. 2010)). The touchstone of predominance is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 597. The rule, however, "does not require a plaintiff seeking class certification to prove that every element of her claim is susceptible to class wide proof." *Amgen*

18

*Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, predominance is determined by whether: "the efficiencies gained by class resolution of common issues are outweighed by individual issues." *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J. 2003) (predominance requires that "common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members"). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. "The Third Circuit has counseled that courts should be 'more inclined to find the predominance test met in the settlement context.'" *In re Remicade*, 2022 U.S. Dist. LEXIS 136774, at *25 (quoting *In re NFL Players*, 821 F.3d at 434).

In this case, key predominating questions are whether AnnieMac had a duty to exercise reasonable care in safeguarding, securing, and protecting the Personal Information of Plaintiffs and the Settlement Class, and whether AnnieMac breached that duty. The common questions that arise from AnnieMac's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g.*, *In re Heartland Payment Systems, Inc. Customer Data Security*

19

*Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312-315 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues).

### b.      Superiority

The last remaining criterion for certification is that the Court must be likely to find that: "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Prudential*, 148 F.3d at 316. "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution of defense of separate actions; (B) the extent and nature of any ligation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and, (D) the likely difficulties in managing a class action." *Id*. Courts also consider whether "a class action would achieve economies of time, effort, and expense, and promote . . .

20

uniformity of decisions as to persons similarly situated. " *Amchem*, 521 U.S. at 615.

Here, the resolution of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution— guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating thousands of individual data breach cases arising out of the same Data Security Incident.

As the common questions of fact and law that arise from the Data Security Incident predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the class should be certified for settlement purposes. *See, e.g.*, *Alfaro v. First Advantage LNS Screening Sols., Inc.*, 2017 U.S. Dist. LEXIS 131688, at *10 (D.N.J. Aug. 16, 2017); *Varacallo*, 226 F.R.D. at 233 (finding class satisfied the superiority requirement where it was "unlikely that individual Class Members would have the resources to pursue successful litigation on their own").

**B.     The Settlement Terms are Fair, Adequate, and Reasonable**

Approval of a class action settlement requires that the Court find that the settlement is "fair reasonable and adequate after considering whether:

> (A)   The class representatives and class counsel have adequately represented the class;
>
> (B)   The proposal was negotiated at arm's-length;

21

(C)   The relief provided for the class is adequate, taking into account:

    i.     the costs, risks, and delay of trial and appeal;

    ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.   the terms of any proposed award of attorney's fees, including timing of payment; and

    iv.   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).

These factors substantially overlap with the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), and *Prudential*, 148 F.3d at 323-324, which the Third Circuit continues to apply when evaluating proposed class action settlements. *See Kanefsky v. Honeywell Int'l Inc*, 2022 WL 1320827, at *4, n.3 (D.N.J. May 3, 2022) (Rule 23(e)(2) was amended in 2018 to include a list of factors for courts to consider in evaluating a proposed settlement of a class action. The Third Circuit has, however, continued to apply the *Girsh* and *Prudential* factors.").

The nine *Girsh* factors are: (1) the complexity, expense, and likely duration

of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Gersh*, 531 F.2d at 157. The additional discretionary *Prudential* factors to be considered, when appropriate and relevant, are: the maturity of the underlying substantive issues; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable. *Prudential*, 148 F.3d at 323.

For the reasons set forth below, the proposed Settlement is fair, reasonable, and adequate, and satisfies the *Girsh* factors and the relevant *Prudential* factors.

### 1. The Complexity, Expense, and Likely Duration of the Litigation

23

Analysis of the first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re NFL Players*, 821 F.3d at 437. "Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming." *Dartell v. Tibet Pharms., Inc.*, 2017 WL 2815073, at \*4 (D.N.J. June 29, 2017).

Here, the costs, risks, and delay of continued litigation weigh in favor of settlement approval. The risks Plaintiffs would face establishing AnnieMac's potential liability and the Settlement Class's losses also favor settlement. *See* Cecchi Decl. ¶ 23. The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits—and securing any amount of damages—are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that AnnieMac will likely assert a number of potentially case-dispositive defenses. Proceeding with litigation would open up Plaintiffs to the significant risk inherent in trying to achieve and maintain class certification and prove liability. *Id*. In fact, should litigation continue, Plaintiffs would immediately have to survive the motion to dismiss, as filed by Defendant in this Court, and that has been fully briefed, in order to proceed past the pleading stage and into litigation. *Id*. Litigation costs would also significantly increase as Plaintiffs begin their preparation for the certification argument and if successful, a near inevitable interlocutory appeal attempt. Additionally, even if Plaintiffs were to prevail at trial, AnnieMac may

24

appeal any verdict, delaying the Settlement Class's relief. *Id*.  As a result, the Court should find this factor supports preliminary approval.

### 2.    The Reaction of the Class to the Settlement

While this factor is better evaluated at the final approval stage, Plaintiffs support the Settlement and Class Counsel is unaware of any opposition to the Parties' settlement. Cecchi Decl. ¶¶ 21-26. Class Members will have the opportunity to object after the Settlement Administrator provides Notice of the Settlement. Plaintiffs anticipate the class will welcome its benefits given the significant relief offered. As a result, the Court should find this factor supports preliminary approval.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed

The purpose of the third factor is to determine "the degree of case development that class counsel have accomplished prior to settlement." *In re Cendant Corp. Litig*., 264 F.3d 201, 235 (3d Cir. 2001). "[C]ourts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Id*. However, "[t]he fact that a case has not proceeded through discovery does not necessarily weigh against settlement approval." *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, 2017 WL 2734714, at *7 (D.N.J. June 26, 2017). "Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents

25

substantial concessions by both parties." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012).

Here, in addition to conducting extensive legal research into the merits of the case (and likelihood of protracted litigation), the Parties also engaged in informal settlement discovery, exchanged mediation briefs, mediated before experienced Judge Diane Welsh (ret.) from JAMS, as well as conducted additional negotiations after they were unable to reach an agreement at mediation. Indeed, following the unsuccessful mediation the Parties engaged in formal discovery, producing documents that further ensured that both sides had an adequate appreciation of the merits of the case. Courts in this District have regularly approved settlements where the case was in its infancy, and, in contrast to the efforts made here, formal discovery had not yet been conducted. *Cf. Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (approving a settlement even though the case was still in the early stages of discovery); *see also McLennan v. LG Elecs. USA, Inc.*, 2012 WL 686020, at *6 (D.N.J. Mar. 2, 2012). Accordingly, this factor weighs towards final approval.

### 4.    The Risks of Establishing Liability and Damages

The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the benefits of an immediate settlement against the likelihood of success at trial and the resulting damage award. *In re Prudential*, 148 F.3d at 319.

26

In other words, these factors attempt "to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238. Both factors weigh in favor of approval in this case.

The Settlement guarantees Settlement Class Members real relief for harms they allege the suffered as a result of the Data Security Incident and helps mitigate the likelihood of any further losses through identity theft insurance and the improved data security measures Defendant has committed to implementing. As Plaintiffs explain above, the risks Plaintiffs face in litigating this case outweigh any benefit trying their case would provide. In fact, Plaintiffs secured an agreement that delivers what they sought to achieve in the first place, requiring AnnieMac to mitigate their harm through credit monitoring, reimburse Settlement Class Members' losses, including a monetary option for Settlement Class Members that do not have any third-party documentation to support losses, and affirm that it improved its cybersecurity.

Additionally, due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles— even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). The Parties' settlement not only avoids those risks but affords class members relief now rather than years

27

later. *See* Cecchi Decl. ¶ 23. As a result, the Court should find these two factors favor settlement.

### 5.      The Risks of Maintaining the Class Action Through Trial

"'[T]he prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action.'" *In re Warfarin*, 391 F.3d at 537 (*quoting GMC Pick-Up Truck*, 55 F.3d at 817). Thus, "this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Id*.

It is far from certain that Plaintiffs' class would survive the "rigorous analysis" of certification. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). Indeed, class certificate has been denied in other data breach cases. *See e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Further and in addition to the challenges inherent in certifying a potential class spanning multiple states, Plaintiffs must proffer a suitable mechanism for calculating class-wide damage. While Plaintiffs believe they could establish the existence of such a mechanism to the Court's satisfaction, this Settlement eliminates the unavoidable risk that they cannot. *See* Cecchi Decl. ¶ 23. Furthermore, even if the Court were to certify a litigation class, the certification would not be set in stone. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a

28

certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). "There will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential*, 148 F.3d at 321. Given the risks, this factor weighs in favor of preliminary approval.

### 6.    The Ability of Defendant to Withstand a Greater Judgment

The Third Circuit has explained that the mere fact that a Defendant "could afford to pay more" in a judgment than it agrees to pay in a settlement "does not mean that [Defendant is] obligated to pay any more than what [the] class members are entitled to under the theory of liability that existed at the time the settlement was reached." *In re Warfarin*, 391 F.3d at 538. Although there is no indication that Defendant has serious financial problems, "to withhold approval of a settlement of this size because the defendants could withstand a greater judgment would make little sense." *McGee v. Cont'l Tire N. Am., In*c., 2009 WL 539893, at *6 (D.N.J. Mar. 4, 2009). "Regardless, the Court of Appeals has found that a defendant's ability to pay a larger settlement sum is not particularly damaging to the settlement agreement's fairness as long as the other factors favor settlement." *O'Brien v. Brain Rsch. Labs, LLC*, 2012 WL 3242365, at *19 (D.N.J. Aug. 9, 2012).

At most, this factor is neutral. *See In re Warfarin*, 391 F.3d at 538 ("Here, the District Court concluded that DuPont's ability to pay a higher amount was irrelevant

29

to determining the fairness of the settlement. We see no error here.").

> **7.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All Attendant Risks of Litigation**

The eighth and ninth factors concerning the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation also weigh in favor of settlement. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under Girsh." *McGee*, 2009 WL 539893, at *6 (quoting *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000)).

Here, the relief that the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and all the attendant risks of litigation. The Settlement Fund, which amounts to approximately $11.69 per Settlement Class Member ($2,000,000 Settlement Fund/171,040 Settlement Class Members), exceeds or is in line with many recent class action settlement agreements relating to financial data breaches. *See, e.g.*, *McPherson v. American Bank Systems, Inc.*, No. 20-cv-1307-G (W.D. Okl.), ECF Nos. 54, 73 (finally approving financial data breach settlement with a $1,700,000 fund for class of 554,000 persons ($3.07

30

per class member)); *In re Morgan Stanley Data Sec. Litig*., No. 1:20-cv-05914-AT (S.D.N.Y), ECF No. 156 (finally approving financial data breach settlement with a $60,000,000 fund for a class of approximately 15,400,000 persons (~$3.90 per class member)); *Keefer v. Fulton Bank, N.A*., No. 1:23-md-03056 (N.D. Ga.), ECF No. 106 (finally approving settlement making available $750,000 in benefits for approximately 111,663 persons ($6.72 per class member)). The gravamen of the litigation is that Defendant violated its duty to Settlement Class Members by failing to undertake reasonable security measures, leading to the potential exposure of their personal and highly sensitive data. The remediation measures Defendant has agreed to implement as part of the Settlement, which are not considered in the per capita recovery amount discussed above, will minimize the risk of further harm in the future. Furthermore, the two monetary benefit options available to Settlement Class Members, including the *pro-rata* cash payment which does not require any documentation or out-of-pocket losses stemming from the Data Security Incident, are a significant benefit.

As discussed extensively above, while Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks. Although ongoing litigation may not result in an increased benefit to the Settlement Class, it would lead to substantial expenditure of resources by both Parties and the Court. Taking into account the risks and benefits Plaintiffs have outlined above, the Settlement falls

31

within the "range of reasonableness."

### 8.   Relevant *Prudential* Factors

In this instance, the relevant *Prudential* factors are whether class members may opt out of the Settlement and whether the procedure for processing individual claims is fair and reasonable. As explained above, Settlement Class Members here are provided the right to opt out of the Settlement Class, and the claims procedure set forth in the Settlement is fair and reasonable.

### C.   The Court Should Approve the Proposed Notice Plan

Before approving the settlement of a class action, the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires notice of: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." In addition, notice of the settlement must be the best that is "practicable under the circumstances" and "clearly and concisely state in plain, easily understood language." Fed. R. Civ. P. 23(c)(2). The form and manner[2] of the notice must satisfy the requirements of due

---

[2] The reasonableness of Plaintiffs' request for attorneys' fees is another potentially

process. *Shapiro v. Alliance MMA, Inc.*, 2018 WL 3158812, at \*7 (D.N.J. June 28, 2018).

Here, the proposed notice plan satisfies the requirements of Fed. R. Civ. P. 23 and due process. AnnieMac agreed to provide Settlement Class Members with notice directly, notice via publication on the Settlement Website that will be maintained by the Settlement Administrator, and a reminder notice to the Settlement Class Members if the claim rate is under 2% as of 45 days before the Claim Deadline. S.A. ¶¶ 99-102. The manner in which Settlement Class Members are to be notified— direct U.S. mail or by email—is the best practicable under the circumstances, and the Settlement Administrator will use reasonable efforts, including skip tracing, to identify and update any Settlement Class Member's mailing address should the direct postcard notice or email notice be returned as undeliverable. *Id*. Providing notice directly to the members of the Class by regular U.S. mail is the gold standard for notice. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) (holding that mailing direct notice to class members is the "best notice practicable"); *Tower v. Portugueses*, S.A., 2025 U.S. Dist. LEXIS 77128, at \*30 (D.N.J. Apr. 22, 2025)

---

relevant *Prudential* factor. However, it can be better addressed after Plaintiffs file a motion for attorneys' fees. As will be set forth more fully in Plaintiffs' forthcoming fee application, Plaintiffs' requested fee percentage—33.33%—is routinely approved by courts as reasonable. *See, e.g.*, *Castro v. Sanofi Pasteur Inc.*, 2017 U.S. Dist. LEXIS 174708, at \*25 (D.N.J. Oct. 20, 2017) ("The one-third fee is within the range of fees typically awarded within the Third Circuit through the percentage-of-recovery method").

(approving email notice as part of a class notice program). Accordingly, the Notice process should be approved by this Court.

     **E.**    **The Court Should Approve a Schedule Leading Up to the Final Approval Hearing**

Plaintiffs request that the Court set a schedule, leading up to the Final Approval Hearing, that would include, *inter alia*, deadlines for notice to Settlement Class Members, for Settlement Class Members to object to the Settlement, to opt out of the settlement, and to make claims under the settlement; and deadlines for the filing of papers in support of final approval, and in support of attorneys' fees and expenses. At the Final Approval Hearing, the Court should hear all evidence and argument necessary to make its final evaluation of the settlement. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval. Additionally, Settlement Class Members who properly object to the settlement may be heard at this hearing. The Court should determine through the Final Approval Hearing whether the settlement will be approved.

**V.**    **CONCLUSION**

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief. The Settlement Agreement is well within the range of reasonable results, and an initial assessment of factors required to be considered on final approval favors approval. Based on the foregoing, Plaintiffs respectfully request this Court certify the class for settlement purposes and

34

grant their Motion for Preliminary Approval of Class Action Settlement.

Dated: July 27, 2026.                    Respectfully submitted,

                                         /s/ James E. Cecchi
                                         James E. Cecchi
                                         Jason H. Alperstein
                                         **CARELLA, BYRNE, CECCHI**
                                         **BRODY & AGNELLO, P.C.**
                                         5 Becker Farm Road
                                         Roseland, New Jersey 07068
                                         Telephone: (973) 994-1700
                                         Facsimile: (973) 994-1744
                                         jcecchi@carellabyrne.com
                                         jalperstein@carelleabyrne.com

                                         *Interim Lead Counsel and Proposed*
                                         *Settlement Class Counsel*

                                         David S. Almeida*
                                         **ALMEIDA LAW GROUP LLC**
                                         849 W. Webster Avenue
                                         Chicago, Illinois 60614
                                         Telephone: (708) 529-5418
                                         david@almeidalawgroup.com

                                         Courtney E. Maccarone
                                         **LEVI & KORSINSKY, LLP**
                                         33 Whitehall Street
                                         17th Floor New York, NY 10004
                                         Telephone: (212) 363-7500
                                         Facsimile: (212) 363-7171
                                         cmaccarone@zlk.com

                                         Leigh S. Montgomery*
                                         **EKSM, LLP**
                                         1105 Milford Street
                                         Houston, Texas 7706
                                         Telephone: (888) 350-3931
                                         Facsimile: (888) 276-3455

35

lmontgomery@eksm.com

A. Brooke Murphy*
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989
abm@murphylegalfirm.com

Amber L. Schubert*
**SCHUBERT JONCKHEER &
KOLBE LLP**
2001 Union St Ste 200
San Francisco, CA 94123
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
aschubert@sjk.law

Marc H. Edelson*
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
medelson@edelson-law.com

Daniel Srourian, Esq.*
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
daniel@slfla.com

Danielle L. Perry*
MASON LLP
5101 Wisconsin Avenue, NW, Suite 305
Washington, DC 20016
Telephone: (202) 429-2290
dperry@masonllp.com

36

Gary M. Klinger*
**MILBERG PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

*Counsel for Plaintiffs and Members
of the Executive Committee*

*\* Admitted pro hac vice*

37