# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| *In re: AnnieMac Data Breach Litigation* | Case No. 1:24-cv-10678-RMB-MJS<br><br>District Judge Renée Marie Bumb<br><br>Magistrate Judge Matthew J. Skahill |

## <u>DECLARATION OF JAMES E. CECCHI</u>

I, JAMES E. CECCHI, ESQ., of full age, hereby declares under penalty of perjury as follows:

1.    I am an attorney licensed to practice in New Jersey and am a member of Carella, Byrne, Cecchi, Brody & Agnello, P.C., and have been named as Interim Lead Counsel for Plaintiffs in the above matter. In such capacity, I am fully familiar with the facts contained herein.

2.    Annexed hereto as Exhibit 1 is the proposed Settlement Agreement between Plaintiffs and Defendant American Neighborhood Mortgage Acceptance Company, LLC ("AnnieMac" or Defendant").

## <u>LITIGATION BACKGROUND</u>

3.    Shortly following their receipt of Defendant's notice regarding a data security incident it experienced, Plaintiffs Sojka, Montenegro, Jacob, ValenCourt, Keefer, Dudley, Long, Ellis, Greene, Graves, and Wray filed their respective

complaints in this court, and all actions arise from the same Data Security Incident (the "Related Actions").

4.      Prior to filing their respective cases, Plaintiffs' counsel conducted extensive pre-suit discovery to ascertain all publicly available details about the cause, scope, and result of the data breach, as well as about the damages suffered by Plaintiffs and the Class.

5.      On January 17, 2025, counsel for these Plaintiffs filed a letter to the Honorable Renée Marie Bumb, requesting a consolidation of the Related Actions, as well as the appointment of Lead Interim Class Counsel, which was subsequently granted on January 29, 2025. Plaintiffs then filed a Consolidated Class Action Complaint on February 21, 2025.

6.      AnnieMac filed its Motion to Dismiss Plaintiffs' operative complaint on April 29, 2025, with Plaintiffs filing their opposition to this Motion on June 2, 2025. Defendant responded in support of its Motion on June 10, 2025.

7.      Shortly therefore and recognizing the benefits of early resolution of Plaintiffs' and the Class's claims—the Parties discussed potential resolution and eventually agreed to an in-person mediation before Judge Diane Welsh (ret.) from JAMS.

8.      Prior to the mediation, Plaintiffs requested, and AnnieMac produced, key information to inform the settlement negotiations, including without limitation

the size of the Settlement Class, facts concerning the Data Security Incident, and other pertinent facts.

9.     On July 2, 2025, Plaintiffs submitted a joint letter with AnnieMac's counsel to the Court, requesting a stay pending the result of the Parties' upcoming mediation, which the Court granted the next day to allow the Parties to discuss the potential for early resolution.

10.     On September 24, 2025, the Parties participated in a full-day mediation with Judge Welsh, a mediator experienced in resolving data breach cases. Under the mediator's guidance, the Parties negotiated at "arm's-length," communicating their positions through her and evaluating the strengths and weaknesses underlying their claims and defenses.

11.     While negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both Parties forcefully advocating the position of their respective clients. From the start, the Parties agreed they would not, and did not, negotiate Proposed Class Counsel's attorney fees or Plaintiffs' service awards until they agreed on the settlement benefits available to the Settlement Class, thus avoiding conflict between Plaintiffs and the Settlement Class.

12.     After a full day of mediation, the Parties had not reached a settlement.

13.    Following mediation being unsuccessful, the Parties began engaging in formal, written, discovery while simultaneously continuing their negotiations in the following. In June 2026, the Parties reached agreement on the key terms of the Settlement.

14.    In the following weeks, the Parties diligently negotiated and circulated drafts of the Settlement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon Kroll Settlement Administration, LLC, as the Settlement Administrator.

15.    Annexed as Exhibit A to the Settlement Agreement is the Email Notice to be disseminated by the Settlement Administrator.

16.    Annexed as Exhibit B to the Settlement Agreement is the Long Form Notice to be disseminated by the Settlement Administrator.

17.    Annexed as Exhibit C to the Settlement Agreement is the Postcard Notice to be disseminated by the Settlement Administrator.

18.    Annexed as Exhibit D to the Settlement Agreement is the Claim Form to be disseminated by the Settlement Administrator.

19.    The Settlement Agreement was finalized and executed on July 27, 2026.

20.    Settlement Class Counsel has successfully negotiated the Settlement of this matter to the benefit of Plaintiffs and Settlement Class Members.

4

## **COUNSEL'S RECOMMENDATION**

21.    My years of experience in representing individuals in complex class actions—including data breach actions—informed Plaintiffs' settlement position, and the needs of Plaintiffs and the proposed Settlement Class. While I believe in the merits of the claims brought in this case, I am also aware that a successful outcome is uncertain and would be achieved, if at all, only after prolonged, arduous litigation with the attendant risk of drawn-out appeals and the potential for no recovery at all. Based upon my substantial experience, it is my opinion that the proposed settlement of this matter provides significant relief to the members of the Settlement Class and warrants the Court's preliminary approval. The settlement is well within the range of other data breach settlements in the relief that it provides.

22.    The Agreement's terms are designed to address the potential harms caused by the incident, with a Settlement that provides credit monitoring and identity theft restoration services, reimbursement for economic losses, and *pro rata* cash payments as well as a verification that Defendant has improved its data security.

23.    This result is particularly favorable given the risks of continued litigation. Plaintiffs face serious risks prevailing on the merits, including proving causation, as well as risk at class certification and at trial, and surviving appeal. While Plaintiffs strongly believe in the merits of their case, they also understand that AnnieMac will likely assert a number of potentially case-dispositive defenses.

Proceeding with litigation would open up Plaintiffs to the significant risk inherent in trying to achieve and maintain class certification and prove liability. In fact, should litigation continue, Plaintiffs would immediately have to survive the motion to dismiss, as filed by Defendant in this Court, and that has been fully briefed, in order to proceed past the pleading stage and into litigation. The level of additional costs would also significantly increase as Plaintiffs begin their preparation for the certification argument and if successful, a near inevitable interlocutory appeal attempt. Additionally, even if Plaintiffs were to prevail at trial, AnnieMac may appeal any verdict, delaying the Settlement Class's relief. A settlement today not only avoids the risks of continued litigation, but it also provides a benefit to the members of the Settlement Class now as opposed to after years of risky litigation.

24.     The Agreement's benefits unquestionably provide a favorable result to the members of the Settlement Class, placing the Agreement well within the range of possible final approval and satisfying the requirements for preliminary approval under federal law, including the law of this Circuit; therefore, the Court should grant preliminary approval.

25.     I, Plaintiffs, and additional Plaintiffs' Counsel who have worked on this matter believe that the Settlement is a fair, reasonable, and adequate result for the Settlement Class.

26.     Additionally, the Notice program contemplated by the Agreement provides the best practicable method to reach the Settlement Class members and is consistent with other class action notice programs that have been approved by various courts for similarly situated matters.

## **COUNSEL'S QUALIFICATIONS**

27.     I and my firm Carella, Byrne, Cecchi, Brody & Agnello, P.C. ("Carella Byrne") have served as lead counsel, co-lead counsel and as committee members in some of the most important class actions in New Jersey.

28.     In addition, I and my firm are currently serving as lead counsel, co-lead counsel and as committee members in some of the most important data security actions in the United States. Carella Byrne is a leader in the field of cybersecurity law.

29.     My biography and Carella Byrne's firm resume is attached hereto as Exhibit 2.

I hereby declare under penalty of perjury that the foregoing statements are true and correct.

By: */s/ James E. Cecchi*
JAMES E. CECCHI

Dated: July 27, 2026.

7